1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL PATRICK BAKER, | Case No.  1:13-cv-01929-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 13, 14) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff Daniel Patrick Baker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits and supplemental social security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from lower back pain and polycystic kidney disease.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

///

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 8.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on August 23, 2010.  (AR 170.)  Plaintiff's applications were initially denied on February 7, 2011, and denied upon reconsideration on June 6, 2011.  (AR 79-82, 88-92.)  Plaintiff requested and received a hearing before Administrative Law Judge Tamia N. Gordon ("the ALJ").  Plaintiff appeared for a hearing on June 14, 2012.  (AR 24-50.)  On June 19, 2012, the ALJ found that Plaintiff was not disabled. (AR 9-19.)  The Appeals Council denied Plaintiff's request for review on September 26, 2013. (AR 1-3.)

### A.   Relevant Hearing Testimony

Plaintiff appeared at the June 14, 2012 hearing with counsel.  Plaintiff was born on November 1, 1960 and was 51 years old on the date of the hearing.  (AR 28.)  Plaintiff graduated high school and has attended some community college.  (AR 28.)

Plaintiff worked in every field of construction from cleaning grounds to reading blue prints until 2008.  (AR 29.)  Plaintiff had worked up to a position where other employees would do the heavy lifting for him.  (AR 29.)  Plaintiff is unable to work because he does not have the stamina and his back is bothering him more.  (AR 30.)  Plaintiff has looked for work, but there is no work for him now.  (AR 30.)  He has been unable to find a job in construction.  (AR 30.)

Plaintiff's lower back is always painful.  (AR 30.)  He had a laminectomy in 1986 after getting hurt on the job.  (AR 30.)  Plaintiff's pain is in the middle of his back and is chronic. (AR 31.)  The pain does lessen when he takes medication.  (AR 31.)  Plaintiff rates his pain as eight on a scale of ten before medication and six or seven on a scale of ten after taking his medication.  (AR 31.)  Plaintiff lessens his pain by lying down and staying off his feet two-thirds of the day.  (AR 32.)  Plaintiff has tried physical therapy, but will not let anyone work on him because he is afraid it will make his back worse.  (AR 33.)

Plaintiff is able to walk fifty yards before he has to stop and rest.  (AR 33.)  It is really hard for him to stand for ten to fifteen minutes.  (AR 34.)  Plaintiff estimates that he can stand a

1  couple of hours during an eight hour day.  (AR 34.)  Plaintiff is able to lift a gallon of milk from

2  the floor or two gallons of milk from table height with no problems.  (AR 35.)  Plaintiff is unable

3  to bend from the waist due to the pain.  (AR 35.)  Plaintiff has to get down on his knees to pick

4  something up off the floor.  (AR 36.)

5         Plaintiff lives with his wife, son, and his seven year old granddaughter.  (AR 36, 38.)  He

6  does the dishes and cleans the kitchen with breaks.  (AR 36.)  Plaintiff also cooks on occasion,

7  dusts, and does laundry.  (AR 37.)  Plaintiff watches his granddaughter before and after school

8  and fixes her lunch.  (AR 37-38.)  Plaintiff takes two naps a day, does not participate in any

9  social activities, and does no shopping because he cannot walk.  (AR 39-40.)

10        A vocational expert ("VE") Carly Coughlin testified telephonically at the hearing.  (AR

11  41-49.)  The VE classified Plaintiff's past work as Dictionary of Occupational Titles ("DOT")

12  869.687-026, construction laborer, very heavy, SVP 2; combined with DOT 860.381-022,

13  carpenter, medium, SVP 7.  (AR 42-43.)

14        **B.      ALJ Findings**

15        Plaintiff meets the insured status requirement of the Social Security Act through

16  December 31, 2013 and has engaged in no substantial gainful activity since August 1, 2008.

17  (AR 14.)  Plaintiff has the following medically determinable impairments: status post lumbar

18  laminectomy in 1986; lumbago; history of polycystic kidney disease; insomnia; and lower

19  extremity weakness.  (AR 14.)  Plaintiff does not have an impairment or a combination of

20  impairments that has significantly limited his ability to perform basic work-related activities for

21  12 consecutive months and does not have a severe impairment or combination of impairments.

22  (AR 14.)  Plaintiff has not been under a period of disability as defined in the Social Security Act

23  from August 1, 2008 through June 19, 2012.  (AR 18.)

24                                   **III.**

25                           **LEGAL STANDARD**

26        To qualify for disability insurance benefits, the claimant must show that he is unable "to

27  engage in any substantial gainful activity by reason of any medically determinable physical or

28  mental impairment which can be expected to result in death or which has lasted or can be

                                      3

1    expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

2    The Social Security Regulations set out a five step sequential evaluation process to be used in

3    determining if a claimant is disabled.  20 C.F.R. § 404.1520; Batson v. Commissioner of Social

4    Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).

5          As relevant here, at step one the ALJ determines if the claimant is presently engaged in

6    substantial gainful activity.  42 U.S.C. § 404.1520(a)(4)(i).  If the claimant is not engaged in

7    substantial gainful activity, the ALJ proceeds to step two.  At step two the ALJ considers if the

8    medical severity of the alleged impairment is sufficiently severe to limit his or her ability to do

9    basic work activities.  42 U.S.C. § 404.1520(a)(4)(ii).  Basic work activities are "the abilities and

10   aptitudes necessary to do most jobs."  42 U.S.C. § 404.1521(b).  "An impairment is not severe if

11   it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a

12   minimal effect on the ability to do basic work activities.' "  Webb v. Barnhart, 433 F.3d 683, 686

13   (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).

14         If the ALJ finds that the claimant does not have a severe medically determinable physical

15   or mental impairment or combination of impairments that has lasted or is expected to last a year,

16   he will find the claimant not disabled.  42 U.S.C. § 404.1520(a)(4)(ii).  If the ALJ concludes that

17   the claimant does have a medically severe impairment, he will proceed to the next steps of the

18   sequential analysis to determine whether the impairments satisfy certain statutory requirements

19   entitling the claimant to be found disabled.  Webb, 433 F.3d at 686.

20         Congress has provided that an individual may obtain judicial review of any final decision

21   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

22   In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

23   Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

24   disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

25   Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

26   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

27   (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

28   considering the record as a whole, a reasonable person might accept as adequate to support a

1    conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

2    Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

3         "[A] reviewing court must consider the entire record as a whole and may not affirm

4    simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

5    Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

6    this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

7    for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

8    susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

9    upheld.")

10                                             **IV.**

11                              **DISCUSSION AND ANALYSIS**

12        Plaintiff contends that the ALJ erred at step two by not properly considering the medical

13   opinions of Plaintiff's physicians in determining that Plaintiff does not suffer from a severe

14   impairment.  The Commissioner argues that substantial evidence exists to support the ALJ's

15   determination that Plaintiff's impairments had less than a minimal effect on his ability to

16   complete basic work activities.  Plaintiff did not file a reply.

17        The ALJ found that "[t]he medical evidence of record reveals that despite the claimant's

18   complaints of severe, debilitating back pain, there is a paucity of objective findings or treatment

19   to support the claimant's contentions."  (AR 18.)  Plaintiff has had infrequent medical visits and

20   a wide and varied range of activities of daily living inconsistent with his allegations of

21   debilitating pain.  (AR 18.)  "In sum, the conclusion that the claimant does not have an

22   impairment or combination of impairments that significantly limits his ability to perform basic

23   work activities is supported by the lack of medical evidence, no significant pain management or

24   medical treatment, and no history of hematuria or any symptoms related to polycystic disease

25   and the essentially normal physical examination of Board Certified physician Dr. Vesali."  (AR

26   18.)

27        The mere presence of an impairment or combination of impairments does not establish

28   disability.  20 U.S.C. §404.1523; Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  To

1   receive benefits a claimant must have a severe impairment.  20 U.S.C. § 404.1520(c).  "An

2   impairment or combination of impairments can be found 'not severe' only if the evidence

3   establishes a slight abnormality that has 'no more than a minimal effect on an individual['s

4   ability to work.' "  Smolen, 80 F.3d at 1290 (citations omitted).  Step two is a "de minimis

5   screening devise to dispose of groundless claims."  Smolen, 80 F.3d at 1290.  An ALJ can only

6   find that claimant's impairments or combination of impairments are not severe when his

7   conclusion is clearly established by medical evidence.  Webb, 433 F.3d at 687 (quoting S.S.R.

8   85-28).

9        "At the second step of sequential evaluation, then, medical evidence alone is evaluated in

10  order to assess the effects of the impairment(s) on ability to do basic work activities."  Titles II &

11  XVI: Med. Impairments That Are Not Severe, SSR 85-28 (S.S.A. 1985).  The step two severity

12  finding should only be used to "deny benefits summarily to those applicants with impairments of

13  a minimal nature which could never prevent a person from working."  Id.

14       **A.    Medical Record**

15       Plaintiff's medical records show that he was seen three times in 2009 (AR 205, 202, 204),

16  two times in 2010 (AR 203, 231), and one time in 2011 (AR 230.)  Other than Plaintiff's

17  subjective complains of pain, these records contains no medical findings other than an occasional

18  notation that Plaintiff's back and extremities are abnormal (AR 206, 205, 202, 203), one finding

19  of neck pain (AR 206), and one finding of pain in his upper jaw (AR 204.)  During this time

20  period, the record reveals a single blood test taken on January 28, 2009 with all results within the

21  normal range.  (AR 207.)

22       Plaintiff had a consultative examination with Dr. Vesali on December 27, 2010.  (AR

23  208-211.)  Dr. Vesali found Plaintiff to have a normal gait and that he could walk on his toes and

24  heels.  Romberg was negative.  (AR 209.)  Plaintiff's examination was essentially normal, except

25  a Patrick test on the right side caused low back pain and there was tenderness on the lumbosacral

26  spine.  (AR 210.)  Dr. Vesali found that Plaintiff had no limitations.  (AR 210-211.)

27       Dr. Reddy conducted a case analysis on January 5, 2011.  (AR 212-213.)  Dr. Reddy

28  found that Plaintiff's kidney disease would have no significant impact on his ability to work.

1  (AR 212.)  Dr. Reddy also found that Plaintiff's consultative physical examination was basically

2  normal, Plaintiff had only 4 doctor visits between 2009 and 2010 and did not have any x-rays or

3  significant pain management to support severity.  (AR 212.)

4       Dr. Brown completed a medical source statement of ability to do work-related activities

5  on March 11, 2011.  (AR 215-220.)  Dr. Brown stated his findings were supported by Plaintiff's

6  1986 lumbar laminectomy and CT/MRI.  (AR 216.)   The limitations found were first present

7  more than 15 years prior.  (AR 220.)

8       Dr. Pentschev completed a medical source statement of ability to do work-related

9  activities on June 17, 2011.  (AR 223-228.)

10      Dr. Nasrabadi completed a case analysis on June 3, 2011.  (AR 221-222.)  Dr. Nasrabadi

11  confirmed Dr. Reddy's prior opinion.  (AR 222.)

12      Dr. Brown wrote a later on May 14, 2012, stating that his prior assessment was based

13  upon history and physical assessment in the office.  (AR 232.)

14      On May 22, 2012, Plaintiff had an x-ray of the lumbar spine with a finding of

15  degenerative disc disease most prominent at L5-SI and calcification in the right abdomen that

16  could be renal stones.  (AR 233.)  On June 12, 2012, Plaintiff had a renal ultrasound showing

17  that the findings were compatible with a history of polycystic kidney disease.  (AR 233.)

18   **B.    ALJ Did Not Err By Finding Plaintiff's Impairments to be Non-Severe**

19      The weight to be given to medical opinions depends upon whether the opinion is

20  proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

21  821, 830-831 (9th Cir. 1995).  In general, a treating physician's opinion is entitled to greater

22  weight than that of a nontreating physician because "he is employed to cure and has a greater

23  opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

24  1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is

25  contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

26  supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

27  1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

28      The ALJ gave no weight to the opinions of Drs. Brown and Pentschev as they were based

on the Plaintiff's subjective complaints, were generally lacking supporting bases for the limitations stated, such as clinical signs, test results, and were without substantial support from other evidence in the record.  (AR 16-17.)

The ALJ need not accept a treating physician's opinion that is brief, conclusory, and unsupported by clinical findings.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  In this instance, Plaintiff provided opinions of Drs. Brown and Pentschev that were merely a check form and were not supported by clinical findings.  Although Dr. Brown sent a letter stating that he had treated Plaintiff since January 5, 2007, and that his assessment was based upon history and physical assessment in the office, he did not include any medical records or include any objective findings.  Dr. Brown's letter does not correct the lack of objective findings in the assessment he provided of Plaintiff's abilities.  The ALJ determined that these opinions relied heavily on Plaintiff's subjective complaints of pain, rather than objective findings.  (AR 16-17.)  Dr. Brown's statement that Plaintiff knows his physical limitations based on his exam, (AR 232), and the failure to provide any medical records is substantial evidence to support the finding that this assessment was based on Plaintiff's subjective complaints and not on any objective medical findings.

Further, the ALJ found Dr. Brown's opinion to be internally inconsistent and that Dr. Brown did not pursue a course of treatment that would be consistent with Plaintiff's complaints of disabling pain.  (AR 16.)  Dr. Brown continued Plaintiff's current medications and allowed the use of Cannabis on a medicinal basis.  (AR 232.)  Dr. Brown merely continued the same conservative treatment Plaintiff had been prescribed in the past.  The ALJ provided legitimate and specific reasons supported by substantial evidence in the record to find that the opinions of Dr. Brown and Pentschev were entitled to no weight.  Ryan, 528 F.3d at 1198.

The ALJ considered Plaintiff treatment records which do not include any opinions indicating that Plaintiff is disabled.  (AR 16.)  These records demonstrate that Plaintiff had at some point developed degenerative disc disease.  (AR 233.)  However, this diagnosis by itself is not sufficient to establish that Plaintiff's back pain was severe.  Review of Plaintiff's treatment records shows that his treating doctor recorded no objective findings nor conducted any tests to

provide any objective findings regarding Plaintiff's alleged back pain.  Plaintiff's treatment was based upon his subjective complaints of pain.  Plaintiff was prescribed Vicodin and on March 16, 2009, the record notes that he reported feeling better when working.  (AR 205.)

The ALJ gave significant weight to the opinion of Dr. Vesali as being consistent with the essentially normal physical examination, lack of any significant medical treatment, physical therapy or pain management, or any objective clinical or laboratory findings to support any level of limitation.  (AR 18.)  The opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician may be substantial evidence, and the ALJ is to resolve any conflict between physician opinions.  Andrews, 53 F.3d at 1041.  In this case, only Dr. Vesali conducted an examination of Plaintiff, set forth his objective findings, and made a determination of Plaintiff's limitations.

Dr. Vesali conducted a comprehensive orthopedic evaluation of Plaintiff on December 27, 2010.  Plaintiff reported that his back was injured in an industrial accident in 1986.  He underwent back surgery that same year with improvement of his right leg pain.  Plaintiff stated that since the surgery he had developed low back pain that is constant with occasional radiation to behind the back knee.  (AR 208.)  Plaintiff reported that standing or sitting more than 20 minutes aggravates the pain.  (AR 208.)  Plaintiff also reported that pain medication and lying down causes the pain to subside.  (AR 208.)  Plaintiff is taking Zolpidem, Hydrocodone/APAP, and prescription Cannabis.  (AR 208.)  Plaintiff reported that he lives with his wife, drives a car, and does dishes and laundry.  (AR 208.)  Plaintiff does not do the grocery shopping or cook. (AR 208.)  He stopped working in 2008 when he was laid off.  (AR 208.)

Dr. Vesali found Plaintiff to be alert and in no acute distress.  (AR 209.)  He had no difficulty getting on and off the examination table or taking off and putting on his shoes.  (AR 209.)  Plaintiff walked with a normal gait; Romberg was negative; and he was able to walk on his toes and heels.  (AR 209.)  Plaintiff did not use any assistive devices.  (AR 209.)

Dr. Vesali set forth his range of motion findings.  In Plaintiff's spine, cervical region flexion was 0-50 degrees and extension 0-60 degrees and lateral flexion was 0-45 degrees and rotation was 0-80 degrees.  (AR 209.)  In the lumbar region, Plaintiff's flexion was 0-90 degrees,

1   extension was 0-25 degrees, and lateral flexion was 0-25 degrees bilaterally.  (AR 209.)

2   Plaintiff's hip joints had forward flexion of 0-100 degrees, backward extension of 0-30 degrees,

3   internal rotation of 0-40 degrees, external rotation of 0-50 degrees, abduction of 0-40 degrees,

4   and adduction of 0-20 degrees bilaterally.  (AR 209.)  Plaintiff knee joints had extension of 0

5   degrees and flexion of 150 degrees bilaterally.  (AR 209.)  Plaintiff's ankle joints had

6   dorsiflexion of 0-20 degrees and plantar flexion of 0-40 degrees bilaterally.  (AR 209.)

7       The straight leg raise was negative in the seated and supine positions bilaterally.

8   Spurling's and Speed's test were negative bilaterally.  (AR 210.)  Axial compression test was

9   negative.  (AR 210.)  Patrick test on the right side caused low back pain.  (AR 210.)  There was

10  tenderness and a scar on the lumbosacral spine, with no tenderness or inflammation in the upper

11  or lower extremities.  (AR 210.)  Plaintiff had normal muscle bulk and tone in the bilateral upper

12  and lower extremities.  His strength was 5/5 in the upper and lower extremities, including grip

13  strength.  (AR 210.)  Light touch and pinprick were intact throughout the upper and lower

14  extremities.  (AR 210.  Plaintiff's deep tendon reflexes were 2+ in the upper and lower

15  extremities.  (AR 210.)

16      Dr. Vesali diagnosed Plaintiff with chronic low back pain, status post back surgery.  (AR

17  210.0  He found that Plaintiff did not have any condition that will impose limitations for 12

18  continuous months and Plaintiff had no physical or workplace environmental limitations.  (AR

19  210-211.)  Dr. Vesali's opinion that Plaintiff had no physical limitations is substantial evidence

20  in support of the ALJ's determination that Plaintiff was not disabled.

21      The ALJ gave some weight to the opinions of the state agency physicians, Drs. Reddy

22  and Nasrabadi.  Dr. Reddy considered that Plaintiff states that he can only walk or stand for 10 to

23  15 minutes due to back pain and walk about 40 yards.  (AR 212.)  Plaintiff is able to vacuum, do

24  the dishes, drive his car to town and back, put air in tires and add fluids to the car as needed, and

25  does some gardening with plants, shrubs, and small trees.  (AR 212.)  Dr. Reddy also considered

26  the medical record and found that Plaintiff's kidney disease would not have a significant impact

27  on his ability to work.  His renal function has been normal with no history of hematuria or any

28  symptoms related to polycystic disease.  (AR 212.)  Plaintiff's polycystic kidney disease was

1  nonsevere.  (AR 212.)

2      Dr. Reddy also found that Plaintiff's consultative examination showed an essentially

3  normal exam and there are minimal treatment records to support the severity of Plaintiff's

4  physical diagnosis.  (AR 212.)  Further, in his judgment x-rays of the lumbar spine were not

5  needed as any findings would not reduce the residual functional capacity to less than medium

6  which would still result in a denial in this case.  (AR 212.)  Dr. Reddy found no twelve month

7  period of greater degree of limitations.  (AR 212.)

8      Dr. Nasrabadi completed a case analysis on reconsideration.  (AR 221-222.)  Dr.

9  Nasrabadi did not give any weight to the opinion of Dr. Pentschev as there were no supportive

10  documents.  (AR 221.)  Dr. Nasrabadi requested medical records from Dr. Brown, incorrectly

11  stating that Plaintiff had seen Dr. Brown for over fifteen years.  (AR 222.)  Two requests were

12  mailed to Dr. Brown requesting medical records.  Plaintiff's counsel was contacted twice to have

13  the medical records forwarded and stated they would fax the records.  (AR 222.)  Since no

14  records were received to support Dr. Brown's opinion it was given no weight.  (AR 222.)  Dr.

15  Nasrabadi affirmed Dr. Reddy's decision.  (AR 222.)

16      Upon review of the medical record in this matter, substantial evidence supports the ALJ's

17  decision that Plaintiff was not under a period of disability from August 1, 2008 through the date

18  of the decision.

19      The Ninth Circuit has held that in considering an impairment or combination of

20  impairments, the ALJ must consider the claimant's subjective symptoms in determining their

21  severity.  Smolen, 80 F.3d at 1290.  The ALJ also considered that Plaintiff's daily activities were

22  inconsistent with his allegations of debilitating impairment.  (AR 18.)  Plaintiff completed an

23  exertion questionnaire on November 15, 2010.  (AR 179-181.)  Plaintiff stated that he was only

24  able to stand or walk for 10 to 15 minutes at a time and can walk about 40 yards.  (AR 179.)

25  Plaintiff performs chores like vacuuming, doing dishes, loading the dishwasher, dusting, and

26  bringing in bag of groceries from the car to the kitchen.  (AR 179-180.)  Plaintiff is able to lift

27  his three year old granddaughter.  (AR 180.)  Plaintiff can drive about an hour in the car, puts air

28  in the tires, checks and adds fluids as needed and washes the car.  (AR 180.)  Plaintiff rakes a

little and does some gardening with plants, shrubs, and small trees.  (AR 180.)

Finally, Plaintiff was only receiving occasional treatment for his complaints of pain and in 2011 he only saw his physician once, on June 17, 2011.  Plaintiff argues that his medical records show that he continued to decline, and while Plaintiff testified at the June 14, 2012 hearing that his pain was getting worse, there are no medical records to show that he received any treatment in the year prior to the hearing nor does the medical record contain any objective findings to support such an decline.  Further, Plaintiff was provided 90 Vicodin with no refills on December 21, 2010, with a notation that he was to return in one month.  (AR 231.)  Plaintiff did not return until June 17, 2011 at which time the record demonstrates no prescription pain medication was prescribed.  (AR 230.)

The only evidence that Plaintiff's condition was worsening is his statements which the ALJ found to not be credible.  Plaintiff's stated activities and infrequent medical treatment are substantial evidence that his pain is not as debilitating as he claims.

Substantial evidence supports the ALJ's determination that Plaintiff was not under a period of disability as defined in the Social Security Act from August 1, 2008 through June 19, 2012.

///
///
///
///
///
///
///
///
///
///
///

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in determining that Plaintiff was not under a period of disability as defined in the Social Security Act from August 1, 2008 through June 19, 2012.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Daniel Patrick Baker.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **December 16, 2014**

UNITED STATES MAGISTRATE JUDGE

13